HINER, Administrator, etc., Respondent, vs. THE CITY OF FOND DU LAC, Appellant.

*February 3 — February 28, 1888.*

*(1–3) Municipal corporations: Injury from defective sidewalk: Fond du Lac charter: Notice of injury: Exhausting remedy against lot-owner: Burden of proof: Pleading: Notice of defect: Nonsuit. (4) Survival of actions. (5) Taxation of costs in supreme court: Printed case.*

1. Sec. 204 of the Fond du Lac city charter (ch. 240, Laws of 1879), relating to the notice to be given before an action in tort can be maintained against the city, being at variance with sec. 1339, R. S., supersedes that section, and in an action of that nature against said city the complaint must allege the giving of the notice required by the charter. *Plum v. Fond du Lac*, 51 Wis. 393, distinguished.

2. Sec. 206 of said charter provides that in case of injury from the defective or dangerous condition of a sidewalk caused by the negligence of any person, such person shall be primarily liable, and the city shall not be liable until all legal remedies against him have been exhausted. Sec. 207 makes the obligation of lot-owners to keep the sidewalks in repair an absolute one, not dependent on any notice from the city authorities. *Held*, that in an action against the city where the plaintiff has proved the facts which show the primary liability of a lot-owner, the burden is upon him to show further that he has exhausted his legal remedies against such owner. [Whether the latter fact is a condition precedent to the right to maintain the action, performance of which must be averred in the complaint, not determined.] *Amos v. Fond du Lac*, 46 Wis. 695, distinguished.

3. A sidewalk had been defective for several weeks. On the day of the injury it had been repaired and new planks laid, but the work of spiking the planks down had not been completed. The plaintiff was injured, in the evening, by stepping upon the end of one of such loose planks. The case was tried on the theory that the previous defective condition of the sidewalk was the proximate cause of the injury, and on that theory the jury found that the injury was caused by the negligence of the city. There being no claim or pretense that any city official had anything to do with leaving the new planks loose, or had actual or constructive notice that they were so left, it is *held* that a nonsuit should have been granted.

[4. Whether the words "or other damage to the person" in sec. 4253,
R. S., as amended by ch. 280, Laws of 1887 (relating to the sur-
vival of actions), should be construed to mean damage resulting
from force, not determined.]

5. The printed case herein consists of 222 pages, and contains about
200 pages of testimony, which should have been condensed into
one third of that space. The clerk is directed, in the taxation of
costs, to allow for the printing of 100 pages only.

APPEAL from the Circuit Court for *Winnebago* County.

This action was originally brought by the plaintiff's in-
testate, Bridget Cuff, together with her husband, to recover
damages alleged to have been received by the said Bridget
on April 11, 1879, by reason of a defective sidewalk on Rose
street in the defendant city. The complaint was afterwards
dismissed as to the husband, and the action proceeded in
the name of the said Bridget as the sole plaintiff.

It is alleged in the complaint that the sidewalk in ques-
tion adjoined lots 93 and 94. The complaint also states the
condition of the sidewalk and the circumstances of the in-
jury with reasonable particularity, and the duty of the city
to keep the same in repair. It also alleges that notice in
writing, signed by the plaintiff, "describing generally the
insufficiency or want of repair of said sidewalk, and describ-
ing the place where the injury occurred, and claiming
satisfaction for such injury from said city, was duly served
on the city clerk of the city of *Fond du Lac* within ninety
days after the happening of the accident."

The answer is substantially a general denial. It also al-
leges that said lots 93 and 94 were owned by some person
unknown to the defendant; that it was the duty of such
owner to keep the same in repair; and that the plaintiff has
not exhausted all her legal remedies against such owner or
the occupant of the premises.

The evidence given on the trial showed conclusively that
the sidewalk at the place of the injury had been greatly
damaged and partly destroyed by a freshet some weeks be-

fore the plaintiff was injured, portions of it having been washed away; and that it became thereby practically impassable, and remained in that condition until the day the plaintiff was injured. On that day, and before the injury, the sidewalk was repaired by and under the direction of the agent of the owner of the lot. Mrs. Cuff lived near the place, and frequently passed there, always going in the street after the destruction of the sidewalk. She passed the place on the afternoon of April 11th while the sidewalk was being repaired, going in the street at that point. On her return home, in the evening, she found the planks of the walk all in place, and attempted to pass over them. The planks were laid lengthwise of the walk. She stepped upon a plank that had not been spiked, one end of which did not rest upon the stringer. The plank was displaced by her weight, and she fell through the sidewalk, receiving the injuries complained of.

At the close of the plaintiff's testimony a motion for a nonsuit was made on behalf of the defendant and denied by the court. The jury returned a special verdict as follows: "(1) Was the sidewalk on the north side of Rose street, in the city of *Fond du Lac*, defendant, on the 11th day of April, 1879, at or about the place described in this action, out of repair and unsafe to pass over? Yes. (2) Had such defect existed for a period of four weeks or more before said 11th day of April? Yes. (3) Were there suitable barriers erected or placed across said sidewalk on both sides of the place out of repair on or about 7 o'clock in the evening of April 11th, 1879, to remain there for the night, by persons engaged in repairing said walk, to warn off and give notice to all persons passing over the same that said walk was out of repair and unsafe to pass over? No. (4) Was the defendant guilty of negligence in failing to repair said sidewalk or in leaving it in the condition it was on said evening? Yes. (5) Did the plaintiff use ordinary care and

prudence by choosing to pass over said sidewalk, so out of repair, on her return home on the evening of said 11th day of April? Yes. (6) Did the plaintiff fall into said sidewalk on the evening of April 11, 1879, and receive an injury therefrom? Yes. (7) Was such injury, if any, caused by the negligence of the city? Yes. (8) What amount of damages, if any, did the plaintiff sustain from the injury received in falling into said sidewalk at the time and place aforesaid? $4,500."

At the same term, and before judgment, a motion was made on behalf of the defendant city for a new trial. Several reasons were assigned therefor, among them that the verdict was not supported by the evidence, and that the damages were excessive. The court ordered that a new trial be granted, unless the plaintiff remit $1,000 of the verdict. The plaintiff thereupon remitted $1,000 therefrom, and the motion for a new trial was denied. Judgment was thereupon entered for the plaintiff for $3,500, and costs. The defendant appeals from such judgment.

After the appeal was taken, probably in the early part of 1887, the plaintiff Mrs. Cuff died, and July 11th of that year the action was revived in this court in the name of her administrator, the present plaintiff.

For the appellant there was a brief by *P. H. Martin,* City Attorney, and oral argument by *Edw. S. Bragg* and *Mr. Martin.*

For the respondent there was a brief by *J. H. McCrory,* and oral argument by *F. F. Duffy* and *Mr. McCrory.*

LYON, J. This record develops at least three material errors, any one of which is necessarily fatal to the judgment. These will be stated and considered in their order.

1. At the commencement of the trial the defendant objected to the admission of any evidence under the complaint, for the reason that it does not state facts sufficient

to constitute a cause of action. The point of the objection was that the complaint does not aver the giving of any sufficient notice of the injury to the city authorities. The objection was overruled. If the giving of the notice required by law is not averred in the complaint, the pleading is fatally defective, and the objection should have been sustained. *Susenguth v. Rantoul*, 48 Wis. 334; *Benware v. Pine Valley*, 53 Wis. 527; *C. & N. W. R. Co. v. Langlade*, 55 Wis. 116. The notice alleged in the complaint would probably be sufficient under sec. 1339, R. S., but that statute is not in force in the city of *Fond du Lac*. Sec. 204, tit. 17, of the charter of that city, enacted in 1879, is as follows: "No action in tort shall lie or be maintained against the city of *Fond du Lac*, unless a statement in writing, signed by the person injured or claiming to be injured, of the wrong and circumstances thereof, and amount of damages claimed, shall be presented to the common council within ninety days after the occurring or happening of the tort alleged." Laws of 1879, ch. 240, p. 443. It will be seen by comparing them that the charter provision is at variance with sec. 1339, R. S., in that it requires the notice to be given to the common council instead of the mayor or city clerk, and requires the amount of damages claimed to be stated in the notice, which sec. 1339 does not, and also requires the wrong and circumstances thereof to be stated, instead of stating the place where such damages occurred and the insufficiency or want of repair which occasioned it. Some of these variances are material, and render the two acts inconsistent with each other. They cannot both stand. Hence, under sec. 4086, R. S., the charter provision prevails, and sec. 1339 is not in force in the city of *Fond du Lac*.

It is quite true that the testimony (received under objection) shows a substantial compliance with the requirements of sec. 204. But, without an amendment of the complaint, the testimony should not have been received. No offer to

amend the complaint was made. It is clear that the complaint avers no sufficient notice of the injury, as required by sec. 204; and, inasmuch as such averment is essential to the validity of the complaint, the demurrer *ore tenus* thereto should have been sustained.

Before leaving this branch of the case, it should be observed that the case of *Plum v. Fond du Lac*, 51 Wis. 393, arose before the enactment of the charter of 1879, and it was there held that the notice required by sec. 1339, R. S., should have been averred. At that time the charter of *Fond du Lac* contained no provision corresponding with sec. 204 of the present charter, so far as we are advised.

2. The next error is the failure of the plaintiff to exhaust her legal remedies against the owner of lots 93 and 94 before bringing this action. The charter provision on that subject is found in sec. 206 of the charter of 1879. The section reads as follows: "In case of injury or damage by reason of insufficient, defective, or dangerous condition of streets, sidewalks, drains, sewers, gutters, ditches, or bridges, produced or caused by the wrong, neglect of duty, default, or negligence of any person or corporation, such person or corporation shall be primarily liable for all damages for such injury, in suit for the recovery thereof by the person sustaining such damages, and the city shall not be liable therefor until all legal remedies shall have been exhausted to collect such damages from such person or corporation."

It was held in *Amos v. Fond du Lac*, 46 Wis. 695, that under the city charter of 1868 (P. & L. Laws of 1868, ch. 59, subch. 13, sec. 11) the obligation of the owner or occupant of the adjoining lot to repair a sidewalk did not arise until he had notice from the city authorities to do so. But the charter of 1879 makes such obligation absolute and not dependent upon any action of the city or the city authorities. Sec. 207 is as follows: "The duty of always keeping the sidewalks, gutters, drains, and ditches on or adjacent

to the lots and premises of any person, in safe condition and good repair, is hereby expressly enjoined and imposed upon all owners or occupants of said lots and premises." Laws of 1879, ch. 240, p. 443. Hence the owner of lots 93 and 94 was under legal obligation to repair the sidewalk in question from the time it was first washed away or injured until it was repaired, and was in default for not doing so, without regard to the action of the city authorities.

On the trial, the plaintiff proved that lots 93 and 94 belonged to one Drury, and that the sidewalk was rebuilt under the direction of Drury's agent on the day the plaintiff was injured, and was left by him in the condition it was when she was injured.

It was held in *Amos v. Fond du Lac,* that under the charter of 1868 the failure to exhaust legal remedies against the owner was matter of defense. Such failure was so pleaded in this action. But after the plaintiff had proved the facts which showed the primary liability of the owner of the lots, it was incumbent upon her to go further, and prove that she had exhausted her legal remedies against such owner; failing in this, she failed to prove a cause of action.

One of the grounds upon which the motion for a nonsuit was predicated was that, under the complaint and proof, the plaintiff had not made a case entitling her to recover. The motion should have been granted or a new trial awarded for that reason. The rule of pleading established in *Amos v. Fond du Lac* was based upon the provisions of the charter of 1868, under which no duty was imposed upon the lot-owner to repair or build the sidewalk on his lot until after due notice. There was no presumption that he had received such notice; hence the necessity of stating the fact as a defense in order to show his duty in the premises and consequent liability for injuries caused by the defective walk. But the charter of 1879 makes such duty

and liability absolute. Hence there is great force in the position maintained by counsel for defendant, that the exhausting of all legal remedies against the lot-owner is a condition precedent to the right to maintain this action. If so, the performance of such condition should be averred in the complaint. Such would be the safer practice; but we do not here determine the point.

3. The third and most vital error is that the case was tried and the verdict and judgment rendered upon the hypothesis that the defective condition of the sidewalk for the four weeks or more before Mrs. Cuff was injured was the direct and proximate cause of her injury. Nothing could be further from the real fact. The broken and defective sidewalk, during all that time, was practically impassable; at least, the plaintiff never attempted to pass over it. It was inconvenient, no doubt, to travelers who otherwise would have used it, but was perfectly harmless so far as exposing any one to peril is concerned. It was the same as though there had been no sidewalk there. The proximate cause of the injury complained of was the loose plank, the end of which did not rest upon the stringer. That, and that alone, was the defect in the walk which was the direct cause of the injury. That defect had existed but a few hours before Mrs. Cuff was hurt, and there is no claim or pretense that any city official had anything to do with leaving the plank in that condition, or had the slightest knowledge of the existence of the defect. As a matter of course, there is nothing in the case to charge those officials with constructive notice of the defect. Hence the finding that the injury was caused by the negligence of the city is entirely unsupported by evidence. For these reasons the nonsuit should have been granted. That being denied, a new trial should have been ordered.

4. At the common law the cause of action would not have survived the death of the plaintiff, and a reversal of the

judgment would end the case. *Randall v. N. W. Tel. Co.*
54 Wis. 140; R. S. sec. 4253. But by ch. 280, Laws of 1887,
it is enacted that actions "for assault and battery or false
imprisonment, or other damage to the person," shall sur-
vive. This is an amendment to sec. 4253, R. S., the amend-
ment consisting, in part, in adding to that section the words
"or other damage to the person." Whether or not this act
extends to damages to the person occasioned by negligence,
or is confined to damages resulting from force, like assault
and battery or false imprisonment, we do not here deter-
mine. It might be claimed, however, with some plausibil-
ity, that because the amendatory words are used in connec-
tion with personal injuries committed with force, the maxim
*noscitur a sociis* should be applied, and the words "other
damage to the person" construed to mean damage result-
ing from force. Neither do we determine whether, in any
event, the amendatory act is properly applicable to this
case. These questions have not been argued, and they
probably are not important in this case, as our judgment
goes upon grounds which seem to be fatal to the action;
and it is not probable that a new trial will be desired. If
one is demanded, we leave it to the learned circuit judge to
determine, in the first instance, whether to grant the same
or dismiss the complaint.

5. The printed case contains about 200 pages of printed
testimony. The reporter's minutes of the testimony is
signed as the bill of exceptions, and nearly the whole of it is
inserted in the printed case. A very large proportion of it
is entirely useless for the purposes of this appeal. It is
mere chaff, and confuses, rather than aids, the investigation
of the case. This is a gross violation of the rules of this
court in that behalf. [In the original opinion a statement
as to who is responsible for this violation of the rule was
here inserted, but having been found erroneous it is omitted
by direction of Mr. Justice LYON.] The testimony could

easily have been condensed into one third the space it now occupies without detriment to either party and greatly to the advantage of the court. It only remains to apply the usual remedy in such cases. The printed case contains 222 pages. In the taxation of costs the clerk will allow for the printing of 100 pages only.

*By the Court.*— The judgment of the circuit court is reversed, and the cause remanded for further proceedings according to law.